IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2006 NOV -6  A 9: 36

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| GEORGE HOEY MORRIS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) |
| | ) |
| HOMELAND SECURITY | ) |
| IMMIGRATION CUSTOMS ENFORCEMENT | ) |
| ALABAMA ATTORNEY GENERAL'S OFFICE | ) |
| THOMAS CORAM JR. (INDIVIDUALLY) | ) |
| MICHAEL CHERTOFF (INDIVIDUALLY) | ) |
| TROY KING (INDIVIDUALLY) | ) |
| MATTHEW BEAM (INDIVIDUALLY) | ) |

CIVIL ACTION NO.:_____

2:06 CV 1005-MEF

Defendants.


# COMPLAINT


This is a complaint for violation of the plaintiff's right for freedom from unreasonable search without a warrant guaranteed by the Constitution of the United States of America. This is a complaint for the violation of Plaintiff George Hoey Morris' right for freedom from unlawful imprisonment.  This is a complaint for the violation of Plaintiff George Hoey Morris' freedom of the press.

## JURISDICTION

1.    Plaintiff invokes jurisdiction of the United States District Court for the Middle District of Alabama Northern Division.

## VENUE

2.      Venue is appropriate in the Middle District of Alabama because Defendant

Thomas Coram Jr. is a resident of the Middle District of Alabama.

3.      Venue is appropriate in the Middle District of Alabama because Homeland

Security, The Alabama Attorney General's Office and Immigration and Customs

Enforcement maintain a presence in the Middle District of Alabama.

4.      Venue is appropriate in the Middle District of Alabama because a substantial part

of the events or omissions giving rise to these claims occurred in the Middle District of

Alabama.

## PARTIES

5.      Plaintiff George Hoey Morris (hereinafter referred to as "Morris") is an adult

citizen and resident of Elmore County, Alabama.

6.      Defendant Thomas Coram, Jr. (hereinafter referred to as "Coram") is an adult

citizen and is a resident of Elmore County, Alabama.

7.      Defendant Homeland Security and Defendant Immigration Customs Enforcement

(hereinafter referred to as "ICE") are Coram's employers and maintain a presence in The

Middle District of Alabama.

8.      Defendant Alabama Attorney General's Office maintains a presence in The

Middle District of Alabama.

9.      Defendant Michael Chertoff is the head of Homeland Security.

10.     Defendants Troy King and Matthew Beam are employed by The Alabama Attorney General's Office.

**Comes now,** the above referenced Plaintiff with the above styled case appearing *pro se* to show this honorable court the following.

11.     Plaintiff George Hoey Morris (Morris) authored a book entitled "virginbride.net" and had said book published. On 02 April 2, 2003, Morris hired Adam Sage (Sage) to deliver the books from the Florida publisher to Morris in Alabama.  While traveling through Covington County, Sage was stopped by Deputy Greg Jackson (Jackson), who during the process of the stop searched the vehicle Sage was driving.  These Officers opened sealed cartons of printed media without a warrant.   Jackson, along with Sheriff Anthony Clark (Clark) seized the property of Morris, which consisted of one thousand (1000) hard copies of "virginbridge.net" and eight hundred (800) CD's named "Young Models". Sage was arrested on child pornography and obscenity charges based on the search of the vehicle. Thereafter, said property was turned over to Eugena Loggins (Loggins) of the Covington County District Attorney's Office.

12.     On May 14, 2004, Morris filed a complaint against Loggins, Jackson and Clark for their unlawful seizure and retention of his property in violation of Morris' 1st, 4th, and 14th Amendment Rights of The United States Constitution and Title 42 USC ~1983 and ~1988.

13.     Alabama Attorney General's Office filed notice of appearance in the case. Troy King and Matthew Beam represented Loggins in the civil case, thus becoming a civil adversary to Morris. They later issued search warrants and ordered Morris' arrest with two warrants from their office.

14.     On 20 November 2004, someone illegally manufactured an explosive device (molotov cocktail) and placed same on Morris' porch along with a note threatening violent action (terrorist threat). Morris called the FBI and Special Agent Margaret Faulkner responded with an interview about that incident.

15.     On 10 January, 2005, Judge Mark Fuller dismissed Morris' complaint. His written decision included instructions for an appeal from prison. Morris filed a timely notice of appeal.

16.     Ten days later, The Alabama Attorney General's Office ( a civil adversary of Morris) executed search warrants on Morris' homes in Elmore County seeking child pornography; said warrants being unsuccessful insofar as they produced no illegal photography.

17.     During the search effort of 20 January 2005, Eclectic Police Department (hereinafter referred to as "EPD") officer Tim Phillips stopped William Morris and Heather Morrison on a public road and asked if he could search their vehicle. William and Heather said "No" whereupon Officer Phillips directed them to drive to the search site where EPD under the orders and direct supervision of Coram thoroughly searched

their vehicle without a warrant and over their strenuous objections. For fear of retaliation, William and Heather have opted NOT to be a party to this lawsuit.

18.    Coram ordered William and Heather to give their baby to EPD whereupon officer Ruth Peters searched the child's diaper under the direct supervision of Coram and over his parents objections while they were illegally detained and forcibly restrained and despite the fact that Coram had no warrant.

19.    All the warrants and the illegal searches had negative results and Morris was free to go. Morris drove to Texas where Coram on 27 January 2005 caused the FBI and the Houston Police Department to handcuff Morris while they executed another search warrant seeking child pornography. The search had negative results and the FBI told Morris he was free to go.

20.    Coram became frustrated at his inability to incarcerate Morris and told the two FBI investigators a lie; that Morris was a fugitive from justice in Alabama and that there existed a warrant for Morris for forgery. Neither statement was true but Coram's lies induced the FBI and the Houston Police Department to place Morris under arrest.  That arrest was the first of  21 such arrests caused by Thomas Coram; each of which was characterized by fraud and illegal actions.

21.    Morris posted bail in Texas and then drove to Alabama where he presented himself and discovered that Elmore County officers could find no record of any arrest warrant at that time. Two hours later, Coram caused a warrant to be hastily produced and

5

issued by the Alabama Attorney General's office (who was Morris' civil adversary)

charging Morris with forgery because Morris had renewed his Alabama driver's license

and had signed "George Hoey Morris." Morris was incarcerated and made bail.

22.     Several weeks later; when Morris was driving to that forgery hearing, Coram's

good friend EPD chief Gordon Ledbetter arrested Morris without a warrant. The timing

of that arrest suggests that this was the result of an illegal conspiracy and designed to

cause Morris to miss that hearing. Ledbetter wrote up the warrant while Morris was

handcuffed at the jail and during the time Morris was required in Court. In fact, the arrest

warrant was created at about the same time as a failure to appear warrant was issued

approximately 400 yards away. Ledbetter refused to notify the Court of Morris' arrest.

That arrest was deliberate to cause Morris to miss the hearing.  Ledbetter's employer is

Alan Nummy, who is Mayor of Eclectic and an employee of Morris' civil adversary, The

Alabama Attorney General's Office.  Morris has filed a separate complaint against

Ledbetter and EPD.

23.     Morris posted bond and was released to discover that Ledbetter had towed his

vehicle to Tallahassee rather than arranging a tow by Morris' friend and two truck

operator "Letts" as Morris had requested. The trunk and interior of Morris' car were later

found to be in disarray; the result of an illegal search of that vehicle.

24.     Coram was unable to find a single photograph for which Morris could be arrested.

After spending months closely examining thousands of photos and files and about 150

pounds of confiscated documents, Coram discovered a four year old fiancé visa that

Morris had used to apply for a visa for his Vietnamese wife. Morris had written "none" in a blank reserved for information regarding "former husbands and wives." Morris had already allowed the application to expire because of his failure to follow through with the application process.

25.    Coram, on the basis of this error, arranged Morris' arrest by four ICE agents and perhaps one dozen other officers. They searched Morris' vehicle while Morris was handcuffed and while one officer covered him with a shotgun. Mr. Coram made that "one word error" on an expired second party visa application the basis for a massive operation and arrested Morris in front of his friends and neighbors leaving the impression that Morris was guilty of a hideous crime. He arrested Morris and searched his car. This arrest was a frustrated attempt by Coram to cause Morris' incarceration after his legitimate efforts had failed.  Morris was arrested for "Visa Fraud" despite the fact a visa had not been issued nor had fraud occurred.

26.    Coram had sworn a misleading affidavit causing the Grand Jury to erroneously believe that Morris had violated a statute designed to punish immigration and passport fraud. The Grand Jury indicted Morris on that statute despite the fact that it does not apply and as a direct result of Coram's misleading testimony. The indictment had nothing to do with the original search warrant purpose and was designed to cause Morris' incarceration.  The indictment charged fraud and misuse of a visa that was never issued.

27.    Morris was released on a $25,000 bond and submitted to electronic monitoring and random drug testing.

7

28.     Morris drove to his attorney's office several weeks later and Coram called Morris'

probation officer Bernard Ross to see if Morris had permission to leave his home. Morris'

attorney, Jennifer Hart, had failed to notify Ross of the visit as she had promised and he

told Coram that Morris was absent without leave.

29.     With his mistaken belief that Morris was violating his probation, Coram and

Ledbetter arranged the arrest of Morris. As soon as he entered Elmore County, Morris

was pulled over by a Wetumpka Police officer who said there were two failure to appear

warrants in Eclectic. They transported Morris to the Elmore County jail where employees

said there was no warrant. A few hours later EPD officer Ruth Peters delivered two hand

written warrants to the jail.  Another Attorney General's Office warrant charged that

Morris had given a false name to a police officer; that name being George Hoey Morris.

The warrants were false. Morris posted bond and returned to Eclectic. Morris' probation

Officer Bernard Ross refused to violate Morris on what he correctly described as

"trumped up charges".

30.     Coram is well aware of the fact that Morris in 1997, after being deported on 3

occasions for doing scientific research in Vietnam, changed his name to Johnny Ray

Fortune. Morris used the identity papers to circumvent travel restrictions in Vietnam and

Morris continued use of this birth name while residing in the USA with the full

knowledge of the CIA and FBI. Morris never committed fraud or any other crime and

never used the name Johnny Ray Fortune inside the USA.

31.     Coram; with total knowledge of the reason for the name change and knowing that

Morris' only victim was the communist government of Vietnam, generated five different

forgery or false name charges against Morris for signing his birth name on traffic tickets

or other documents. He also caused each charge to be a felony when in fact it should have

been a misdemeanor. His motive for these misleading charges was to cause Morris'

incarceration. These arrests are listed below.

> (a) Morris was arrested in Texas on an Alabama Attorney General warrant for
>
> renewing his Alabama Driver's License one year earlier as "George Hoey
>
> Morris." Morris was rearrested in Alabama on the same charge of signing his
>
> name; which according to Coram is a felony.

> (b) Coram caused a warrant (felony) to be issued after Morris signed his name on
>
> a speeding ticket that had been paid months earlier.  The warrant was from
>
> Alabama Attorney General's Office and the charge later disappeared from the
>
> docket.

> (c) Coram communicated with Lieutenant Kasarek who is a Florida police officer
>
> and convinced her to issue three felony warrants for Morris signing his own name.

32.     Coram engaged in a conspiracy with Covington County District Attorney Eugenia

Loggins, The Alabama Attorney General's Office (Loggins attorney), EPD Police Chief

Gordon Ledbetter, Attorney General employee and Eclectic Mayor Alan Nummy, the

EPD, and at least one Alabama State Patrol Officer in an illegal effort to cause Morris'

incarceration and thereby derail Morris' claim for compensation for the unlawful seizure of 1000 books titled "virginbride.net" and 800 compact discs titled "Young Models."

33.    The actions taken by these coconspirators caused the violation of Morris' constitutional rights with two searches of Morris' home without a warrant, five warrantless searches of Morris' vehicle, and one warrantless search of Heather's vehicle. These unconstitutional searches by Coram and his coconspirators are listed below.

   (a) *Alabama State Trooper Daniel Dean, with the assistance of the entire EPD, searched Morris' vehicle without a warrant and despite Morris' demands for constitutional protection. Morris filed suit whereupon Coram and Officer Dean conspired and arrested Morris on a felony charge of giving a false name to a police officer. This charge should have been classified a misdemeanor. In fact, Morris never gave his name to the officer. Morris had signed a speeding ticket with his own name "George Hoey Morris" and paid the ticket. Morris was arrested for this "crime" by an Alabama Attorney General's Office warrant. That charge later disappeared from the docket.*

   (b) *On a night during which the entire EPD was doing overt surveillance on Morris' home, Heather left in Morris' vehicle and was stopped by EPD before she traveled 500 yards. EPD officer Chris Miles demanded she open her trunk because he suspected she was smuggling a garbage bag from the home. He had no warrant.*

(c) *Later that same night Officer Ruth Peters and another EPD officer awake Morris to inquire about a "missing juvenile female." Morris answered all their questions but refused to allow them to "come inside and look around." Officer Peters thanked Morris for his cooperation and left. Approximately 15 minutes later Chief Gordon Ledbetter returned with the entire EPD, demanded entry over Morris' objections and took total control of the house for eight hours during which he conducted a major warantless search involving a dog that did not alert. He then ambushed William when he returned home and searched his vehicle without a warrant and over his objections. EPD eventually claimed they found a tiny residue of a leafy substance and drug paraphernalia and placed Morris under arrest. The substance was not drugs. Morris' vehicle was thoroughly searched; also without a warrant.*

(d) *Morris, while traveling to the Elmore County courthouse to answer charges of "fraud" on the premise that he had committed a crime when he renewed his drivers license as "George Hoey Morris," was pulled over by EPD Chief Gordon Ledbetter. The timing of the arrest creates a very strong likelihood that this was an illegal conspiracy involving Coram. Morris was arrested without a warrant on a harassment charge (this charge was later dismissed) and Morris' vehicle was thoroughly searched without a warrant during the time Ledbetter wrote up the harassment warrant and while a failure to appear warrant was also issued for Morris.*

(e) Morris' vehicle was searched without a warrant by 4 ICE agents and one dozen other law enforcement officers under the direction of Coram when Morris was taken into custody by Coram and placed under federal custody.

(f) Heather's vehicle was searched without a warrant and over her objections during a legal search of Morris' home. Further discussion of this incident would be redundant as it is described in the foregoing portion of this complaint.

(g) Coram and Ledbetter, in an effort to create further problems for Morris and his family, had caused a Department of Human Resources investigator to "drop in" unannounced. After several such visits, Morris informed the investigator to arrange all further visits through his attorney and provided her his card. She arrived again unannounced and Morris told her once again to arrange the visit through his attorney. She returned a few minutes later with Ledbetter; and Morris called 911 to request assistance to keep Ledbetter out. After four sheriffs arrived, Morris was placed in the rear of a patrol car in handcuffs "for his own safety" while police searched his home without a warrant. They confiscated William's 22 caliber rifle from William's closet. It had no ammunition and had a large bulky knife duct taped on the end. Coram later took Morris' voluntary admission of a 26 year old drug felony and charged Morris with being a felon and a drug addict in possession of a firearm; a weapon he did not even know was there.
The DHR employee, who used her investigation as the premise of the search, concluded the baby was being cared for.

*(h) During the time immediately after Morris' arrest on nonexistent "failure to appear" warrants by request from EPD, Morris' keys were in the possession of the arresting officer who could have (and possibly did) search the vehicle without a warrant. This potential incident; unlike the aforementioned, is pure speculation.*

34.     Coram used the enhanced powers provided under Homeland Security laws after the terrorist incident on 11 September 2001 to monitor Morris' communication by phone and mail. He initiated a world-wide search for Morris' so called "victims" and engaged every tool at his disposal to find evidence of child sex tourism, child pornography, human trafficking and child eroticism. He confiscated all of Morris' photos, files, and records without ever finding a single photograph to substantiate a charge. With the full knowledge that Morris had been investigated since 02 April 2002 in search of child pornography with negative results, and with his knowledge that his own investigation found no illegal photography; Coram testified under oath that Morris was under investigation for child pornography in front of a US magistrate. In view of the fact that he had to have known that Morris' produced nor possessed no such illegal material, this was perjury. This misleading testimony caused Morris' unlawful imprisonment pending trial.

35.     Coram testified under oath in US Federal Court that Morris was charged with fraud, forgery, and giving a false name to a police officer. With the full knowledge that these charges were generated by him by using false and misleading statements, Coram testified in a manner that led the magistrate to believe that there existed some type of fraud when in fact there was no victim.  Coram testified that there existed outstanding Alabama Attorney General warrants for Morris; an untrue statement.  He created the

illusion that other independent agencies were aware of Morris' so called "crimes" and were acting independently when in fact every charge involved Morris' legal use of his own name. This testimony caused Morris' unlawful imprisonment pending trial. Morris was under arrest for eighteen months until trial, sixteen of which he was incarcerated.

36.     Coram took control over the FBI investigation concerning the explosive device and terrorist threat. He did this so that he could generate his own conclusions. Coram knowingly falsified the results of that investigation to make it appear that Morris had illegally manufactured that device and had written the terrorist threat. He testified under oath that he had compared the handwriting on the note with known samples of Morris' handwriting and that he was certain that Morris had committed those crimes. He did not inform the Court that he had provided that evidence to forensics for an examination. Coram is in all likelihood withholding these investigation results. Coram's perjury caused Magistrate Susan Russ Walker to declare Morris a danger to the community and to order his unlawful imprisonment pending trial.

37.     Coram testified under oath that Morris' book "virginbride.net" had photographs of underage females in "provocative positions" when in fact this is not true. He provided the Court with a few photographs from Morris' website "virginbride.org" that he had electronically obscured the face and crotch area creating the illusion that these were examples of illegal photography when in fact every photograph on the website is legal and in many ways resembles a J.C. Penny or Sears catalogue. His testimony influenced the Court so heavily that by the end of the two hour hearing the District Attorney was discussing Morris' "child pornography business" as if it were fact. This misleading testimony helped to cause Morris unlawful imprisonment.

14

38.    Coram testified in Federal Court under oath that Morris had approached four underage females and requested that they pose for photographs in their panties and bra. Circumstances and further investigation have since proven that this is untrue testimony. He knew these allegations were false because he had interviewed the girls and their parents.

39.    Coram told so many lies on 17 June 2005 that it created the illusion that Morris was a danger to the community and a horrendous criminal. The transcript of that hearing contains testimony that he must have known was false and therefore he is guilty of perjury. In his quest to incarcerate Morris and as a result of his continued failure to do so; Coram intentionally committed perjury in order to obtain his goal. A review of the transcript will shown this to be true.

40.    Over a period of time Coram became more aggressive and began to threaten family members with investigations and criminal charges if they helped Morris. He had Morris' sister Phyllis and Morris' brother David relay specific threats regarding Morris' children participation in his websites. He threatened in involve William and Heather in charges that they manufactured child pornography and said he had proof that he would use that could jail them for a decade. He said he would cause that investigation if they assisted Morris in any way. Coram said he would confiscate all Morris' property and spent considerable effort attempting to do so. This behavior by Coram caused Morris to sign over that property to his father, William Ray Morris.

15

41.    Coram describes Morris as a "child molester," a "child predator," a "pervert" and other derogatory terms to Morris' neighbors. He does this despite the fact that Morris has never been convicted or even accused of such a crime. Coram has generated press releases that caused newspapers to publish stories connecting Morris to child pornography, child sex tourism, human trafficking and other hideous crimes against children. He has presented these falsehood as fact so often that the vast majority of people believe them to be true. This behavior is libel and slander.

42.    Coram brags and boasts to his neighbors in Eclectic that he is going to "get Morris off the streets" before Coram retires in a few months. Coram told Morris' sister Phyllis that his career objective is to put Morris in jail. After his legitimate efforts failed, Coram then resorted to illegal methods and finally to committing perjury in order to place Morris in jail and thereby save face in the neighborhood, camouflage the fact the he has spent perhaps millions of dollars on a "wild goose chase," and to limit Morris' ability to defend himself against Coram's charges.

43.    Coram generated a voting fraud charge in Northwest Florida, by informing Sheriff's there that Morris had a felony conviction in 1980 and has registered to vote in 1999 in Okaloosa County. During the process of arranging the charge, Coram told them some lies. One of the deputies issued a press release that Morris was engaged in child sex. The "TOP story" on Montgomery's WSFA 12 was titled "Eclectic Man Under Scrutiny In Child Sex Case." Associated Press picked up the story and circulated in worldwide. The story included a report that "Agents were looking into allegations that he was involved in unlawful sex with hundreds of minor females between the ages of 11 and

16

15 in other countries. They include Vietnam, Thailand, and Mexico." Despite the fact

that these allegations are not true, the report further damaged Morris reputation and

limited his chances for a fair trial in the other cases generated by Coram. The voting

fraud charge disappeared from the docket.


44.    Coram caused a superseding indictment to be issued changing the facts of the two

gun charges he initiated to reflect different circumstances than the original charges. He

then assisted in the arrest of a family member (without charges) in a successful effort to

cause the Plaintiff to plead guilty to all charges despite the fact that none were in fact true

in an effort to protect his family. Judge L. Scott Coogler later ruled that the plea was

coerced by threats.

45.    Coram eventually caused three "superceding indictments" each changing the facts

or leveling new charges. The third superceding indictment caused the execution of two

more warrants each seeking child pornography. These unsuccessful warrants further

disrupted plaintiff's life and are indications to the enormous efforts to arrest plaintiff for

any crime. These indictments caused Morris to be arrested for making a false statement

on a passport application almost ten years ago; another example of malicious prosecution.

46.    Morris, after 16 months in custody eventually went to trial on the gun charges.

Thomas Coram at the last moment placed into evidence an envelope containing many

negatives of photos of young models featured in the book "virginbride.net".

47.    The jury foreman sent out a note on the third day of deliberations informing Judge

L Scott Coogler that he had viewed the negatives and recognized them as photos for

which plaintiff was on trial; a fact he should not have known. Judge Coogler dismissed

the foreman and appointed an alternate.

48.    Within hours the jury found the undersigned "Guilty". This plaintiff asserts that it is virtually impossible that other jurors did not view the images and the guilty verdict was a direct result of their exposure to them and not because they believed him to be guilty.

49.    The judge allowed into evidence the book "virginbride.net" and refused to stipulate that it was not child pornography. He also described a major part of the law as irrelevant. A confused jury later found the undersigned guilty of violation of Vietnamese law.

50.    The judge gave jury instructions that effectively annulled this plaintiff's marriage; said instructions being based on false information supplied by Homeland Security.

In summary, after the seizure of media authored by the undersigned, Thomas Coram and others launched an expensive campaign to find Morris guilty of Production or Possession of Child Porn. Morris was placed in jail after false information was given to the judge. Morris had to prepare his defense while incarcerated. Morris was arrested 21 times, many times without a warrant and every time without a crime. During the effort to incarcerate Morris, crimes were committed against him that are articulated in this complaint. The seized books and cd's are still in the custody of Covington County; more than three years after the confiscation. All property seized by Homeland Security are still in their possession. No child pornography has ever been found but Morris has been found guilty of having sex with his own wife and fraud with a visa that was never issued; these verdicts the result of misinformation and a prosecution friendly court.

Wherefore, the foregoing premises considered:

Plaintiff Morris prays that this Court order the immediate return of all computer and photography equipment, photographs, compact discs, floppy discs, documents, files,

notes, and all other confiscated items and that Coram be required to show cause for any

single photograph or item not returned.

Plaintiff Morris prays that this Court require Coram to cease and desist from filing

or initiating any further complaints or warrants against him through the use of false or

misleading statements and that Coram immediately issue a public statement

acknowledging the fact that there has been no evidence discovered linking Morris to

child pornography, child eroticism, child sex tours, human trafficking, statutory rape,

child molesting or any of the other crimes against children that Coram claims have

occurred.

Without such an acknowledgment from Coram it was impossible for Morris to

obtain a fair trial on the other so called "crimes" for which Coram has caused Morris to

be arrested.  Without such an acknowledgment Morris' friends and neighbors will

continue to believe Coram's lies.

Plaintiff requests that this court order the Defendants to produce for inspection all

arrests warrants for Morris.

Plaintiff seeks not a financial award; only that the conspiracy against him be

acknowledged and he be released from custody.


## First Cause of Action

51.    Plaintiff George Hoey Morris realleges and incorporates by reference paragraphs

1 through 50 as if set forth fully herein.


52.    The arrest of Morris in Texas and his incarceration there without a warrant and for

signing his birth name is a violation of Morris' protection from unlawful imprisonment

guaranteed him by the United States Constitution.  The arrest was a deliberate effort by Coram to cause Morris' incarceration by providing misleading information.

53.    The actions of Coram caused Morris' unlawful imprisonment, stress, financial hardship, embarrassment, mental anguish, distress and humiliation.

**Wherefore,** Plaintiff George Hoey Morris demands:

a.    Release from custody..

b.    Such other, further, or different relief to which Plaintiff may be entitled.

## Second Cause of Action

54.    Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 50 as if set forth fully herein.

55.    The arrest and incarceration of Morris in Alabama after his return from Texas on the charge that he signed his own name was a frustrated attempt by Coram to jail Morris and is a violation of his protection against unlawful imprisonment that is guaranteed him by the United States Constitution.

56.    This action by Coram caused Morris unlawful imprisonment, extreme stress, financial hardship, embarrassment, mental anguish, distress and humiliation.

**Wherefore,** Plaintiff George Hoey Morris demands:

a.    Release from custody.

20

b.      Such other, further or different relief to which Plaintiff may be entitled.

# Third Cause of Action

57.    Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 50 as if set forth fully herein.

58.    The illegal arrest without a warrant resulting from the conspiracy between Coram and Ledbetter was a deliberate attempt to cause Morris to miss his forgery hearing and is a violation of his Constitutional protection against unlawful imprisonment.

59.    This action by Coram caused Morris to miss a court hearing and for a failure to appear warrant to be issued for his arrest and unlawful imprisonment, extreme stress, financial hardships, embarrassment, mental anguish, distress and humiliation.

60.    This action by Coram resulted in a search of Morris' vehicle without a warrant and is a violation of Plaintiffs protection against unlawful searches guaranteed by the United States Constitution.

**Wherefore,** Plaintiff Morris demands:

a.    Release from custody

b.    Such action, further or different relief to which Plaintiff may be entitled.

# Fourth Cause of Action

61.     Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 50 as if set forth fully herein.

62.     The arrest of Morris by ICE and a dozen police officers because of a small error made on a fiancé visa application four years prior constitutes an over reaction and an effort to get Morris in jail by a frustrated Coram using a statute that does not apply. Morris was arrested on a "visa fraud" statute for misuse of a visa that was never issued. Furthermore, fraud never occurred.

63.     Morris arrest and incarceration because he had written "none" in a space asking about "former husbands and wives" and arrest in full view of all his friends and neighbors left the false impression that Morris was guilty of a hideous crime.

64.     This action by Coram caused Morris unlawful imprisonment, search without a warrant, extreme stress, financial hardship, embarrassment, mental anguish, distress and humiliation.

**Wherefore,** Plaintiff Morris demands:

    a.  Release from custody.

    b.  Such action, further or different relief to which Plaintiff may be entitled.

## Fifth Cause of Action

Plaintiff Morris realleges and incorporated by reference paragraphs 1 through 50 as if set forth fully herein.

65.    The arrest of Morris by Wetumpka Police without a warrant was the result of an illegal conspiracy involving Coram and designed to cause a violation of Morris' probation.

66.    This action by Coram caused Morris' unlawful imprisonment, extreme stress, financial hardships, embarrassment, mental anguish, distress and humiliation.

**Wherefore,** Plaintiff Morris demands:

a.    Release from custody.

b.    Such action, further or different relief to which Plaintiff may be entitled.

## Sixth Cause of Action

67.    Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 50 as if it is set forth fully herein.

68.    The acts of Coram's coconspirators at his direction caused Morris' home and vehicle to be searched without a warrant on numerous occasions (to be detailed in Court) and caused a violation of Morris protection against unreasonable searches guaranteed by the United States Constitution.

23

69.    This action by Coram caused Morris' unlawful imprisonment, extreme stress, financial hardships, embarrassment, mental anguish, distress and humiliation.

**Wherefore,** Plaintiff Morris demands:

    a.      Release from custody.

    b.      Such action, further or different relief to which Plaintiff may be entitled.

## Seventh Cause of Action

70.    Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 50 as if it is set forth fully herein.

71.    The perjury under oath by Coram that is too numerous to attempt to detail without a transcript of the detention hearing caused Magistrate Susan Russ Walker to erroneously believe Morris to be a danger to the community and a flight risk and to order his imprisonment pending trial.  A review of the transcript will identify said perjury.

72.    This perjury by Coram caused Morris' unlawful imprisonment, extreme stress, financial hardships, embarrassment, mental anguish, distress and humiliation.

**Wherefore,** Plaintiff Morris demands:

    a.      Release from custody.

    b.      Such action, further or different relief to which Plaintiff may be entitled.

## Eighth Cause of Action

73.    Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 50 as if it is set forth fully herein.

74.    Coram's falsification of the results of a FBI investigation and perjury about these falsified results caused Magistrate Susan Russ Walker to believe that Morris had manufactured an illegal explosive device and had written a terrorist threat and declare Morris was a danger to the community and to order Morris held without bond.

75.    This action by Coram caused Morris' unlawful imprisonment, extreme stress, financial hardships, embarrassment, mental anguish, distress and humiliation.

**Wherefore,** Plaintiff Morris demands:

a.    Release from custody.

b.    Such action, further or different relief to which Plaintiff may be entitled.

## Ninth Cause of Action

76.    Plaintiff Morris realleges and incorporated by reference paragraphs 1 through 38 as if it is set forth fully herein.

77.    Coram's unwanted contact with Morris' family members and his claims that Coram was going to seize family property held in Morris' name caused Morris'

alienation from family members. His attempt to force Morris to relinquish control over the family property eventually caused him to seek false testimony through threats and coercion resulting in a complaint being filed against Coram by Morris with the FBI. This action by Coram constitutes extortion and coercion and was an illegal intrusion into Morris' family affairs.

78.    This action by Coram caused fear and uncertainty among Morris' family members and distrust by them of Morris. This action by Coram caused Morris' to relinquish control of the property.

**Wherefore,** Plaintiff Morris demands:

    a.      Release from custody.

    b.      Such action, further or different relief to which Plaintiff may be entitled.

## Tenth Cause of Action

79.    Plaintiff realleges and incorporates by reference paragraphs 1 through 50 as if it is set forth fully herein.

80.    Coram's description of Morris with untrue characteristics and his claim that Morris is a child predator, child molester etc., without a basis in fact has caused irreparable damage to Morris reputation in the community. Coram's press releases contained false and derogatory information that had no basis in fact and have caused the false belief on a national scale that Morris has in the past committed unspeakable and despicable crimes against children. This has ruined Morris' reputation, caused Morris to

be unlawfully imprisoned and made it impossible for Morris to receive a fair trial on the false and misleading charges generated by Coram.  Coram is guilty of libel, slander and defamation of character.

**Wherefore,** Plaintiff Morris demands:

a.    Release from custody.

b.    Such action, further or different relief to which Plaintiff may be entitled.

## Eleventh Cause of Action

81.    Coram's arrest of Morris for 21 so called "crimes" ranging from signing his own name to having sex with his own wife caused Morris illegal incarceration and was caused to hide the fact that his original investigation was a "wild goose chase". The arrests were designed to cause Morris' incarceration for a crime; any crime.

**Wherefore,** Plaintiff Morris demands:

c.    Release from custody.

d.    Such action, further or different relief to which Plaintiff may be entitled.

## Verification

Before me, the undersigned notary public, appeared George Hoey Morris, who being

duly sworn, did sign his name in attestation that the foregoing factual allegations

contained in this complaint are true and correct to the best of his knowledge, information

and belief on this the _____ 𝐒₁ _____ day of _____ Nov 2006 _____.


_____
~~George~~ Hoey Morris

**Sworn to and subscribed** before me on this the ____ 1st ____ day of

_November , 2006_____.

_Lisa Hampton Davis_

Notary Public

My commission expires _March 17, 2009_

## Certificate of Service

I hereby certify that on the 6th day of November 2006 that I provided a true and correct

copy of the foregoing to the following Defendants by placing same in the United States

mail postage prepaid and properly addressed as follows:

Michael Chertoff
United States Department
Of Homeland Security
Legal Department
Washington DC 20528

United States Customs and
Immigration Enforcement and
Department of Homeland Security
900 Western American Circle
Suite 301
Mobile, Alabama 36609

US Immigration and Customs Enforcement
301 South Ripley Street
Montgomery, Alabama 36104

Thomas Coram, Jr.
c/o Thomas Coram
745 Kowaliga Road
Eclectic, Alabama 36024

29

Troy King
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130-0152

Matthew Y. Beam
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130-0152

**GEORGE HOEY MORRIS**
GeorgeHoeyMorris.com
(website address)

Federal Annex
Montgomery City Jail
P.O. Box 159
Montgomery, Alabama 36101

Complaint filed:
US District Court
Middle District – Northern Division
P.O. Box 711
Montgomery, Alabama 36101

DEFENDANTS NOTIFIED CERTIFIED MAIL.